# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND  DIVISION

CHRISTINA M. JONES,         )
         )
        Plaintiff,         )
         )
      v.         )     Case No. 3:11-cv-0302
ALPHA RAE PERSONNEL, INC. and  )
AFFILIATED COMPUTER SERVICES,  )
INC.,         )
         )
        Defendants.        )

## OPINION AND ORDER

Plaintiff Christina Jones brought this action against her employer, defendant Alpha Rae Personnel, and Alpha Rae's contractor, defendant Affiliated Computer Services, asserting retaliation claims under Title VII.  Jones alleges that Alpha Rae and ACS removed her from ACS's South Bend job site in retaliation for filing two formal concurrent complaints with the Equal Employment Opportunity Commission and the South Bend Human Rights Commission claiming race-based discriminatory conduct by her supervisor and other ACS employees.  Jones also brought a defamation claim, but she appears to have abandoned it.  Alpha Rae and ACS now seek summary judgment.

The main problem for Jones is that it's pretty clear from the record that she wasn't a model employee – far from it, in fact.  ACS cited Jones for numerous deficiencies *before* Jones filed her first discrimination complaint.  And her inadequate performance continued after her complaints were filed, which led to her termination.  Jones's only response to this evidence is that the timing of her removal is suspicious.  But that's not enough, for two reasons.  First, she mistakes the event that must be the predicate for any suspicious timing argument – the protected activity that is the basis for the retaliation claim, which in this case occurred many months before

her removal.  And even setting that aside, Seventh Circuit precedent is clear that suspicious

timing alone is generally insufficient to prove a retaliation claim.  That principle is particularly

applicable where, as here, an overwhelming weight of evidence shows that the adverse action

was undertaken for reasons apart from any retaliatory motive.

I therefore must conclude that the evidence in this case – when viewed in the light most

favorable to Jones – shows that her prior discrimination complaints did not play a substantial

role in Alpha Rae's and ACS's decision to remove her from the ACS job site.  This is true

whether I apply a "but for" causation requirement or a more lenient "mixed motive" test (though

as I'll address later, I think the former analysis is the correct one to use).  Therefore,  for the

reasons discussed below, ACS's and Alpha Rae's summary judgment motions are **GRANTED**.

## BACKGROUND

Alpha Rae is an employment staffing company.  One of its clients was ACS, an

information technology company.  ACS had a contract with the State of Indiana to process

welfare applications, and Jones was assigned by Alpha Rae to ACS to perform the duties of an

eligibility specialist beginning in August 2008.  (DE 1 at 2.)  An ACS eligibility specialist is

responsible for handling and processing cases from clients of the state in order to determine

eligibility for a number of state welfare programs like Medicaid or food stamps.  (DE 36-5 at 1-

2.)  Jones initially was assigned to the ACS center in Trigon, but after a few voluntary transfers,

she ended up in South Bend. (DE 36-3 at 2.)   Her immediate ACS supervisor in South Bend was

team leader Jeanette Riegle (DE 36-4 at 1), who in turn reported to Assistant Strategic Business

Unit Manager Tara Richie.  (DE 36-5 at 1.)

Jones's performance prior to her discrimination complaints was spotty.  Although Jones

did not receive any formal warnings or disciplinary actions prior to November 2009 (DE 39 at 4), she was the subject of at least six "coaching moments" (a sort of informal – but apparently documented – citation issued when a case processing error has been made (DE 36-5 at 2)) between April 14, 2009 and October 10, 2009. (DE 36-6 at 1.) Jones "believes" that she did not receive any more coaching moments than any of her colleagues. (DE 39 at 6.) But her belief is not proof, and ACS and Alpha Rae have produced unrebutted evidence indicating that this was the highest number of all eligibility specialists on Jones's team during that time period. (DE 36-6 at 5-6.) Alpha Rae and ACS also cite Jones's production record, which reflects that she failed to meet performance goals in eleven out of thirteen months. (DE 36-5 at 2, 7-8.) Finally, on October 13, 2009, Richie's supervisor, Charles Smith, received an email from another team leader complaining about Jones's disruptive and disrespectful behavior. (*Id.* at 3, 9.)

I should note at this point that one issue in the case involves the potential "conversion" of Jones from an Alpha Rae employee to an ACS one. This is an action whereby – after some undefined probationary period – an Alpha Rae employee ceases employment with that company and begins working full-time for ACS. (*Id.* at 3.) Conversion apparently is desirable because it gives an employee benefits like health insurance and sick time. (DE 39-2 at 6.) The parties agree that Jones approached a senior ACS manager (as well as Smith) on October 23, 2009 to ask why she had yet to be converted. (DE 36-6 at 9; DE 39-3 at 6.) Jones seems to imply that this inquiry was the impetus for the increasingly negative attention that she subsequently received, though she doesn't clarify why asking about her conversion status might provoke that scrutiny, and she certainly doesn't suggest that her inquiry is related to the repeated coaching moment citations and the October 13, 2009 email criticism that preceded it.

3

In any event, there is no dispute that ACS became sharply critical of Jones starting in November 2009. On November 6, 2009, Richie sent an email to Alpha Rae raising a number of complaints about Jones's behavior, attitude and performance. (DE 36-6 at 2, 9.) Alpha Rae subsequently issued a formal Employee Warning Notice to Jones citing her for deficiencies in work quality, work productivity and professionalism, and it placed her on a thirty-day probationary period. (DE 33-5.) It further stated that she would be reconsidered for conversion after another ninety day probationary period. (*Id.*) Jones responded with an email disagreeing with this criticism (DE 36-2 at 20-21), and on November 13, 2009, she filed a Charge of Discrimination with the South Bend Human Rights Commission and the EEOC. (DE 1-9.)

ACS's complaints about Jones and her performance continued to escalate after the filing. On December 22, 2009, Riegle contacted Alpha Rae to request that it instruct her to sign quality review forms that she had apparently been refusing to sign until that point. (DE 36-4 at 1, 3.) Richie sent an email to Alpha Rae on January 22, 2010 assessing Jones's performance; she agreed that Jones had demonstrated some improvement in her productivity since the November warning, but wrote that Jones still demonstrated a perceived lack of respect (due to her failure to take responsibility for her errors) and needed to improve her work quality. (DE 36-6 at 2, 10-12.) Jones then met with Richie and an Alpha Rae representative on January 29, 2010 to further discuss the potential for conversion and was told that she needed to demonstrate more improvement. (DE 36-6 at 2.) Jones filed a second discrimination complaint with the South Bend Human Rights Commission and the EEOC ten days later. (DE 1-10.) An EEOC factfinding and mediation proceeding was held on June 4, 2010, but it did not resolve Jones's claims. (DE 39-3 at 14-17.)

The incidents involving Jones continued throughout the spring and early summer of 2010. On March 23, 2010, she did not show up for her shift or call to explain her absence (DE 36-5 at 3-4), though there is some dispute as to whether she had a plausible excuse for it. (DE 36-2 at 13-14.) In June 2010, Jones informed ACS and Alpha Rae that she had been hospitalized over the weekend (DE 33-3 at 46), but she failed to provide requested medical records to Alpha Rae so it could determine whether she required medical leave or similar accommodation. (DE 33-1 at 6-7.) On June 28, 2010, Jones was sent home for wearing jeans with holes in them in violation of ACS's dress code policy, though Jones claims that she had worn these jeans to ACS on multiple occasions. (DE 33-3 at 43-45; DE 36-6 at 3, 13-14.)

The straw that broke the camel's back was a computer tracking system that seems to have been implemented at some point in June or July 2012. This system, which allowed ACS to determine the amount of time an employee is actually performing work in the company's computer system and not engaging in offline activities, indicated that during the week of July 12-16, 2010, Jones had over sixteen hours of unaccounted (and thus presumably nonworking) time during scheduled working hours. (DE 36-5 at 4-5; DE 36-6 at 3, 15-22.) ACS claims that based on this substantial nonproduction and Jones's extensive record of disciplinary and work quality problems, it then asked Alpha Rae to remove Jones from the assignment, which the company did on July 20, 2010. (DE 36-5 at 5, 16.) Jones seems to have tried for a couple of weeks to get Alpha Rae to find other work for her in the South Bend area, but apparently none was available (other than with ACS, which would not take her). (DE 33-2 at 2-3.)

Jones filed a third charge with the South Bend Human Rights Commission and the EEOC on July 21, 2010 alleging that ACS and Alpha Rae had retaliated against her for her previous

discrimination complaints. (DE 1-1.) The EEOC issued a no probable cause determination and a right to sue letter on May 4, 2011. (DE 1-2.) Jones brought this lawsuit on August 1, 2011. (DE 1.) ACS and Alpha Rae filed separate motions for summary judgment on July 2, 2012.[1] (DE 32; DE 35.)

## DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material facts exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, I must construe all facts and draw all reasonable inferences from the record in the light most favorable to the nonmoving party. *Id.* at 255. But the nonmoving party is not entitled to the benefit of "inferences that are supported by only speculation or conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (citations and quotations omitted).

Jones contends that ACS and Alpha Rae removed her from her assignment to ACS's South Bend facility in retaliation for her two complaints of race-based discrimination in November 2009 and February 2010. Title VII prohibits an employer[2] from discriminating

---

[1] Although ACS and Alpha Rae have moved separately for summary judgment, they essentially assert the same fundamental argument – that the weight of the evidence shows that Jones was removed from her ACS assignment for reasons other than retaliation. Therefore, I will address the motions together.

[2] I should note from the outset that it is not entirely obvious to me that ACS should be considered to be Jones's employer for Title VII purposes. After all, she entered into an employment relationship with Alpha Rae and was paid by that company, although she worked at an ACS job site and was managed and supervised (for the most part) by ACS. The question of whether a contract worker like Jones should be considered to be an employee of the company

against an employee because she has opposed a practice that Title VII has made "an unlawful employment practice," or because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. *See* 42 U.S.C. § 2000e-3(a).

A plaintiff can establish a *prima facie* case for retaliation by the direct or indirect method. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 784 (7th Cir. 2007); *Haywood v. Lucent Techs., Inc*., 323 F.3d 524, 531 (7th Cir. 2003). Jones does not employ the indirect method, which requires the identification of a similarly situated employee who did not engage in statutorily protected activity. *See Nichols*, 510 F.3d at 785; *Haywood*, 323 F.3d at 531. So she must rely on the direct method of proof.

Under that approach, Jones must offer either direct or circumstantial evidence that: (1) she engaged in a statutorily protected activity; (2) the defendant subjected her to an adverse employment action; and (3) a causal connection exists between the two events. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008); *see also Rogers v. City of Chicago*, 320 F.3d 748, 753-54 (7th Cir. 2003). Direct evidence requires "an admission by the decision maker that his actions were based upon the prohibited animus," *Rogers*, 320 F.3d at 753, which Jones has not presented. Accordingly, she must rely on circumstantial evidence (*i.e*., "evidence that allows a jury to infer intentional discrimination by the decisionmaker"), which is perfectly acceptable.

---

with which she is staffed for Title VII purposes is a hard one, and federal courts likely would apply a complex six-factor analysis to resolve it. *See Solon v. Kaplan*, 398 F.3d 629, 632-33 (7th Cir. 2005) (generally discussing Title VII employee-employer analysis). In this case, however, ACS has not argued that its possible non-employer status precludes Jones's retaliation claim, so for purposes of the summary judgment motions now before me, I will assume that both ACS and Alpha Rae are her employers.

*Id.*; *see also Sylvester v. SOS Children's Vills. Ill., Inc.,* 453 F.3d 900, 902-03 (7th Cir. 2006) (noting that circumstantial evidence can be used to show retaliation even under the direct method). Circumstantial evidence can include things like suspicious timing, ambiguous statements, behavior towards other employees, unfavorable treatment compared to similarly situated employees, and so on. *See Volovsek v. Wis. Dep't Agric. Trade & Consumer Prot.*, 344 F.3d 680, 689-90 (7th Cir. 2003).

There is little dispute that the first two elements of a Title VII claim have been met here – *i.e.*, that Jones engaged in a protected activity (filing the discrimination complaints with state and federal agencies) and that she suffered an adverse action (her removal from the ACS job site). The only question before me is whether the evidence – when viewed in the light most favorable to Jones – is sufficient for a reasonable factfinder to conclude that there is a causal connection between the two.

Before I examine the evidence that is relevant to her retaliation claim, it may be helpful to note something that *isn't* especially important – evidence concerning alleged racial discrimination on the part of ACS or Alpha Rae or their employees that occurred prior to Jones's first discrimination complaint. This may seem a bit odd at first blush. But Jones is pursuing a *retaliation* claim in her lawsuit, not a discrimination one. Whether her prior two complaints had any merit says nothing about whether ACS and Alpha Rae removed her for filing them. More generally, evidence concerning ACS's and Alpha Rae's alleged misconduct prior to Jones's first discrimination complaint on November 13, 2009 has limited relevance for the simple reason – as I'll discuss below – that a company can't act in a retaliatory manner against an employee before the occurrence of the event that is the basis for this retaliation. *See, e.g., Long v. Teachers' Ret.*

*Sys. of the State of Ill.*, 585 F.3d 344, 354 (7th Cir. 2009).

## A.

Jones's sole evidentiary support purporting to show a sufficient causal connection between her removal from the ACS job site and her discrimination complaints involves the allegedly suspicious timing of that removal. But this isn't a stereotypical case where a Title VII complainant is fired or otherwise disciplined within a short period of time after filing his or her complaint. Indeed, there is little dispute that Jones continued to work at the ACS South Bend job site for more than eight months after her November 13, 2009 complaint, and for more than five months after the February 9, 2010 one. And those intervals are far too lengthy to support an inference of causality. *See Longstreet v. Ill. Dep't. of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) (four-month gap was insufficient to establish a causality); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918-19 (7th Cir. 2000) (three-month gap alone could not reasonably support a causality for a retaliation claim).

Jones attempts to circumvent this seemingly insurmountable hurdle by contending that the relevant suspicious interval in this case is not the period between her discrimination complaints and her ultimate removal from the ACS job site. Instead, she asserts, the relevant suspicious time period is the one between the June 4, 2010 EEOC factfinding and mediation and her July 20, 2010 removal.[3] Jones essentially argues that ACS and Alpha Rae were "lying in

---

[3] That amounts to an interval of 46 days, which is right at the outer boundary of what might be considered suspicious timing. *See Magyar v. St. Joseph Reg'l Med. Ctr.,* 544 F.3d 766, 772 (7th Cir. 2008) ("This court has found a month short enough to reinforce an inference of retaliation.") (*citing Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004)); *Boumehdi v. Plastag Holdings, LLC,* 489 F.3d 781, 793 (7th Cir. 2007) (holding that a jury could infer intent to retaliate where adverse action occurred just one month after complaints about discrimination).

wait" during the EEOC investigative process, and when the June 4, 2010 meeting made them confident that they would ultimately prevail, they then decided to "pounce[]" and "[go] in for the kill." (DE 39 at 16-17.)

The main problem with this theory is that Jones provides no legal support for her assertion that the purportedly suspicious timing of an adverse employment action can be predicated on an event other than the protected activity that is the basis for the alleged retaliation. To the contrary, the only case that she cites granted summary judgment *against* the complainant because the interval between the *protected activity in question* and the subsequent adverse employment action was too attenuated to show causality. *See Dennis v. Potter*, No. 1:08-CV-198-TLS, 2012 U.S. Dist. LEXIS 40034, at *57-58 (N.D. Ind. March 23, 2012).

*Dennis* turns out to be strong support for ACS and Alpha Rae (which is not surprising, since it first appeared in ACS's summary judgment brief). The case cites the Supreme Court decision in *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001), in which a Title VII claimant argued that the timing of her unwanted transfer was sufficiently suspicious to support an inference of causality because it occurred three months after the EEOC issued a right-to-sue letter regarding a previous sex discrimination complaint. The Court rejected that theory as "implausible," noting that the issuance of the letter was an activity performed by the EEOC and not the Title VII plaintiff, and thus it could not constitute a protected activity on her part. *Id.* at 272-73. The Court did not completely foreclose the possibility that suspicious timing alone might be sufficient to show causality, but it cautioned: "The cases that accept mere temporal proximity between an employer's *knowledge of protected activity* and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the

temporal proximity must be 'very close . . . .'" *Id.* at 273-74 (*quoting O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th 2001)) (additional citations omitted) (emphasis added).

I read this decision to fundamentally mean that the "suspicious timing" stopwatch starts when the employer first becomes aware of the employee's protected activity, and it isn't reset or paused by any subsequent event during the EEOC investigative process (*e.g.*, the issuance of a right-to-sue letter in *Clark County*, or the EEOC factfinding and mediation here). Therefore, Jones's retaliation theory cannot survive summary judgment because the legally relevant interval – the time between her discrimination complaints and her removal – is much too long to be considered suspicious.

**B.**

But let's assume for the moment that this analysis isn't correct. Let's assume that it's possible that a sufficiently short interval between a non-protected activity – in this case, the EEOC factfinding and mediation proceeding – and the adverse employment action might constitute suspicious timing for the purposes of a Title VII retaliation claim. Let's even assume that the 46 day interval between the EEOC factfinding and mediation and Jones's removal is within the window of what reasonably might be seen as suspicious timing.

Jones still cannot prevail in that (largely counterfactual) scenario because it is a "rare occasion" where suspicious timing alone will be sufficient to create a triable issue. *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005); *accord Sauzek*, 202 F.3d at 918 ("[T]he mere fact that one event preceded another does nothing to prove that the first event caused the second."); *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001) (plaintiff "needs more than a coincidence of timing to create a reasonable

inference of retaliation"); *Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001) (same); *see also Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004) (holding that "[b]y itself, temporal proximity would not normally create an issue of material fact as to causation . . ." in the ADA context). In all but the most rare of cases, in addition to "suspicious timing," a plaintiff "must produce facts which somehow tie the adverse decision to the [plaintiff's] protected actions." *Sauzek*, 202 F.3d at 918 (7th Cir. 2000).

Jones has failed to point me to any such additional facts in this case. Indeed, the overwhelming weight of the evidence raised during the summary judgment briefing substantially *undercuts* her claims. It indicates that Jones was removed from the ACS job site due to an extensive and well-documented history of performance, attitude and work quality deficiencies. For example, Jones claims that she began to receive formal disciplinary citations (as opposed to the prior informal "coaching moments") only upon filing her first discrimination complaint. But that bald assertion is belied by the record. Her first formal disciplinary action came on November 6, 2009 – a week *before* her first complaint.[4] Moreover, this claim minimizes the host of informal citations that Jones received for months prior to her first complaint – including, most importantly, the six coaching moments, the October 13, 2009 and November 6, 2009 email complaints from ACS to Alpha Rae, and the formal citation issued to Jones by Alpha Rae (also on November 6, 2009).

---

[4] There are a few allegations in the summary judgment briefing suggesting that Jones believes that Alpha Rae and ACS began retaliating against her as a result of her October 23, 2009 inquiry about her conversion status. But asking about one's employment status isn't a protected activity, and it can't be the basis for a Title VII retaliation claim. *See Ogle v. Wal-Mart Stores East, LP*, No. 2:09-CV-317-PPS, 2011 WL 4452224, at *4 (N.D. Ind. Sept. 23, 2011) (holding that retaliation predicated on a non-protected activity is not actionable under Title VII).

This mountain of evidence precludes Jones's lawsuit. Where the events that set a disciplinary decision in motion precede the protected activity, courts have found that suspicious timing will not support a retaliation claim. *See Long*, 585 F.3d at 354. As the *Long* court put it: "While a sudden decline in performance evaluations after an employee engages in a protected activity may provide circumstantial evidence of discriminatory intent, a decline in performance before the employee engages in protected activity does not allow for an inference of retaliation." *Id.*

The bottom line in this case is that the undisputed evidence shows that Jones was heading toward disciplinary action, presumably including removal from her ACS assignment, well before her first November 13, 2009 discrimination complaint. That largely precludes any (hypothetical) inference of retaliation based only on suspicious timing. *See Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005) (explaining that "numerous incidents brought [employee's] professionalism and ability . . . into question" and thereby undermined any inference of suspicious timing); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 321 (7th Cir. 1992).

## C.

And there's one final reason to rule in favor of ACS and Alpha Rae. Let's continue to (counterfactually) assume that the legally relevant suspicious interval in this case is the one between the June 4, 2010 EEOC factfinding and mediation and her July 20, 2010 removal from the ACS job site, and that this time period is sufficiently short to constitute sufficient evidence of retaliation. Now, let's add a new assumption that it is possible that a reasonable jury might believe – based solely on this suspicious timing evidence – that retaliation played a role in her

removal. Jones still might lose in that alternate reality. The dispositive legal issue in that hypothetical becomes whether a Title VII retaliation claimant must show that retaliatory motives were the "but for" cause of the adverse employment action, or merely that they were only a part of the reason for the employer's decision to undertake that action.

As I have noted before, this is not a clear cut issue. *See Ogle,* 2011 WL 4452224, at *8 (discussing the "but for" vs. mixed motive causation issue). In fact, as I observed in *Ogle*, there is an apparent split among Seventh Circuit cases on how strong the connection must be between the protected activity and the adverse employment action. Some decisions hold that a plaintiff claiming retaliation must show that he or she would not have suffered an adverse action "but for" the protected activity; others seem to conclude that it is enough for the protected activity to constitute one of many reasons for the adverse employment action. *Id.*

I think the better view is the first one, which was announced and reinforced in a series of decisions dating back to *McNutt v. Board of Trustee of University of Illinois*, 141 F.3d 706 (7th Cir. 1998). These cases hold that Congress implicitly rejected a "mixed motive" approach to retaliation claims when it amended Title VII in 1991. *Id.* at 707; *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 963 (7th Cir. 2010); *Speedy v. Rexnord Corp.*, 243 F.3d 397, 406 (7th Cir. 2001). They explain that the applicable Title VII provision authorizing mixed motive claims (42 U.S.C. § 2000e–2(m)) – which was enacted in response to a prior Supreme Court decision, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), first addressing such claims – is limited on its face to situations in which "race, color, religion, sex, or national origin was a motivating factor for any employment practice," and as such, the omission of retaliation claims from that statutory language means that they must be excluded from its scope. *See McNutt*, 141

14

F.3d at 707-08; *Serwatka*, 591 F.3d at 963; *Speedy*, 243 F.3d at 406. The Seventh Circuit is not the only federal appellate court to reach this result; indeed, as the DC Circuit observed in 2005, *every* circuit court to directly address the issue by that point had concluded that retaliation claims can't be proved through a mixed motive causation theory. *See Porter v. Natsios*, 414 F.3d 13, 19 (D.C. Cir. 2005) (observing that "every circuit to address the issue has held that the mixed motive provisions of the 1991 Act do not apply to retaliation claims" and cataloguing decisions).

And there can't be any doubt that Jones would lose under a "but for" causation analysis. ACS and Alpha Rae have pointed me to a wealth of (again, mostly uncontested) evidence indicating that she received numerous documented citations from April 2009 until July 2010 involving work quality, productivity and behavioral deficiencies. Many of these deficiencies occurred prior to her filing discrimination complaints in November 2009 and February 2010. (DE 36-6 at 1 (coaching moments occurring prior to November 13, 2009); DE 36-5 at 3, 9 (email complaint lodged with Alpha Rae in October 2009); DE 36-6 at 2, 9 (omnibus email complaint submitted on November 6, 2009).) At a bare minimum, no reasonable jury could conclude that these deficiencies were insufficient to support her removal regardless of whether retaliation was also a motivating factor. In other words, even if I believed Jones's conclusory allegation that retaliation was a contributing factor to her removal – and as held above, I don't – it would have to be only one of many. Therefore, her claim fails the "but for" causation test.

But what about those other Seventh Circuit cases that seem to apply a mixed motive analysis to Title VII retaliation claims? *See, e.g., Gates v. Caterpillar, Inc.* 513 F.3d 680, 686 (7th Cir. 2008); *Culver*, 416 F.3d at 545. These decisions primarily just applied the mixed motive analysis to the retaliation claims at issue without any discussion of *why* it was appropriate

to do so.  In other words, they did not engage in the sort of detailed statutory parsing employed in *McNutt* and its progeny.  That seemed a bit curious, but the answer to the question of why the court used a mixed motive analysis in these cases is found in their briefing.  A review of the briefs shows that the parties never really engaged in any extensive discussion of the "but for" vs. mixed motive causation issue, at least in any level of detail.  That goes a long way towards explaining why the Seventh Circuit panels in *Gates* and *Culver* addressed this question in such a conclusory manner.  Put simply, they (understandably) assumed that a mixed motive analysis would apply to a retaliation claim because no one ever raised the possibility that it didn't.  I'm thus forced to choose between a line of cases in which the issue was raised, briefed and analyzed, and a handful of decisions in which it was assumed without any discussion or argument because it was never really raised by the parties.  Viewed in this light, the choice becomes an easy one.

In short, the better-reasoned view of Title VII's causation requirement as applied to retaliation claims is that Jones must show that she would not have been removed "but for" her discrimination claims, and not merely that retaliation was one of several reasons for it.  As I said before, the evidence in this case – even when viewed in the light most favorable to Jones – is clear that ACS and Alpha Rae had more than ample grounds to remove her even before she filed her complaints.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the pending motions for summary judgment.  Because this ruling disposes of all the issues in this case, the clerk shall **ENTER FINAL JUDGMENT** in favor of ACS and Alpha Rae stating that plaintiff Christina Jones is

entitled to no relief on her complaint. The clerk shall treat this civil action as **TERMINATED**.

All further settings in this action are hereby **VACATED**.

        **SO ORDERED**.

        ENTERED: October 18, 2012.

                                   s/ Philip P. Simon

                                   PHILIP P. SIMON, CHIEF JUDGE
                                   UNITED STATES DISTRICT COURT